# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOHN F. MILLER III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CV-242 |
| | ) | |
| UP IN SMOKE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

The Plaintiff, John Miller, is a shareholder of Defendants Up In Smoke, Inc. ("Up In Smoke"), and CR Smoke, Inc. ("CR Smoke"). On August 25, 2009, Miller brought suit based on diversity jurisdiction and in his own name against Up In Smoke, CR Smoke, Fats Enterprises, LLC, Charlotte Rodriguez ("C. Rodriguez"), Rudy Rodriguez ("R. Rodriguez"), and Estep Accounting Service, Inc, alleging, among other claims, that they misappropriated assets and diverted business opportunities from Up In Smoke and CR Smoke. (Compl. ¶¶ 75-129.) Miller Fireworks, a company owned by Miller, also alleges that the Rodriguez's have failed to pay for a shipment of fireworks.

The issue now before the Court is whether all of Miller's claims have been properly brought in his own name as a direct action, or if some claims must be brought as a shareholder derivative action on behalf of Up In Smoke and CR Smoke. If this lawsuit must be partly recast as a derivative action, the Court must also consider whether diversity jurisdiction is destroyed—and the case subject to dismissal—as Up In Smoke, CR Smoke, Fats Enterprises, LLC, Charlotte Rodriguez, and Rudy Rodriguez are all Indiana citizens. Finally, the Court must

decide whether to exercise supplemental jurisdiction over the remaining claims and the claim by Miller Fireworks. As will be discussed, Counts I through VI must be recast as a derivative action, but Up In Smoke and CR Smoke do not need to be re-aligned as plaintiffs and diversity jurisdiction is preserved. Furthermore, the Court will exercise supplemental jurisdiction over Miller's direct claims and the claim of Miller Fireworks.

## II. FACTUAL AND PROCEDURAL HISTORY

Miller and C. Rodriguez formed Up In Smoke, Inc., in 1997 for the purpose of operating a retail tobacco, alcohol, and fireworks outlet in Fremont, Indiana. (Am. Compl. ¶ 13.) Miller and C. Rodriguez each have a fifty-percent interest in Up In Smoke. (Am. Compl. ¶¶ 14-15.) Miller was initially the president of Up in Smoke, but resigned in 2008. (Am. Compl. ¶ 14.) C. Rodriguez is the Secretary and Treasurer of Up In Smoke and, along with R. Rodriguez, is responsible for the day-to-day operation of the business. (Am. Compl. ¶ 21.) Miller was provided with a yearly salary and financial reports for Up In Smoke.

Miller and R. Rodriguez formed CR Smoke, Inc., in 1998 for the similar purpose of operating a retail tobacco, alcohol, and fireworks outlet in Howe, Indiana. (Am. Compl. ¶¶ 44-46.) As with Up In Smoke, R. Rodriguez was to provide Miller with the business's financial reports. R. Rodriguez was only to receive a salary from CR Smoke if he actively managed the operation of the retail store. (Am. Compl. ¶ 47.)

Over the next decade, Miller's relationship with the Rodriguez's gradually deteriorated. Miller claims that he was frozen out of Up In Smoke and CR Smoke in 2005, when the Rodriguez's allegedly stopped sending him his salary and financial reports and began diverting corporate assets to their own benefit. (Am. Compl. ¶¶ 29-31, 48-52.) The falling-out ultimately

2

culminated with Miller filing suit in his own name against Up In Smoke, CR Smoke, Fat Enterprises, LLC, R. Rodriguez, C. Rodriguez, and Estep Accounting (Up In Smoke and CR Smoke's accounting firm) on August 25, 2009. (Docket # 1). Miller Fireworks—a corporation controlled by Miller that also sells fireworks—has also brought one claim against R. Rodriguez and C. Rodriguez.[1]

Count I alleges that R. Rodriguez and C. Rodriguez misappropriated the corporate opportunities of Up In Smoke and CR Smoke; Count II alleges that R. Rodriguez and C. Rodriguez violated their fiduciary obligations to Up In Smoke, CR Smoke, and Miller, individually; and Count III alleges that R. Rodriguez and C. Rodriguez converted assets belonging to Up In Smoke and CR Smoke. (Am. Compl. ¶¶ 75-91.) Furthermore, Count IV seeks to compel an equitable accounting and a constructive trust over the assets of Up In Smoke and CR Smoke; Count V alleges a breach of fiduciary duty against Estep Accounting; and Count VI alleges that the Defendants (presumably all of them) conspired to misappropriate the assets of Up In Smoke and CR Smoke. In Count VII, Miller claims that he is entitled to inspect Up In Smoke and CR Smoke's corporate records pursuant to Indiana Code § 23-1-52-2; in Count VIII, Miller asks the Court to appoint a Receiver over the defendant corporations; in Count IX, Miller asks that, in the alternative, Up In Smoke and CR Smoke be judicially dissolved; and Count X seeks an award of punitive damages and attorney fees. Finally, in Count XI, Miller Fireworks claims that R. Rodriguez and C. Rodriguez have breached a firework sales agreement and failed to pay it $29,933.99.

During the July 27, 2010, evidentiary hearing on the appointment of the Receiver

---

[1] The parties agree that Indiana law governs this dispute.

(Docket # 90), the Court raised the question of whether some of Miller's claims must be brought as a shareholder action in the name of Up In Smoke and CR Smoke. Accordingly, pursuant to Federal Rule of Civil Procedure 12(h)(3), the parties were instructed to each file an opening brief and a response brief to address the Court's concerns about whether the action must be re-cast, at least in part, as a shareholder derivative action. (*See* Docket ## 98-101.) Following that round of briefing, the parties were then ordered to file supplemental briefs to address whether Miller's possible direct claims exceeded $75,000 in controversy. (*See* Docket # 106, 107.) On August 25, 2010, the Court heard oral argument on whether to recast Miller's claims as a shareholder derivative action.

### III. STANDARD OF REVIEW

It is a "well-established general rule that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation, even if the injury has the effect of impairing the value of their stock." *Barth v. Barth*, 659 N.E.2d 559, 560 (Ind. 1995) (*Barth II*). *See also Knauf Fiber Glass, GMBh v. Stein*, 622 N.E.2d 163, 165 (Ind.1993); *Moll v. S. Cent. Solar Systems, Inc.*, 419 N.E.2d 154, 161 (Ind.1981). Rather, a shareholder must bring a derivative action in the name of the corporation. *Barth II,* 659 N.E.2d at 560. "[D]erivative actions are those that are asserted by a shareholder on the corporation's behalf against a third party because of the corporation's failure to take some action against a third party." *Id*. Derivative actions serve the important policy concerns of preserving the corporate form, avoiding multiple shareholder lawsuits, and protecting corporate creditors by keeping the proceeds of any recovery within the corporation. *Id*. at 561; *W & W Equip. Co. v. Mink*, 568 N.E.2d 564, 570 (Ind. Ct. App. 1991).

4

In a shareholder derivative lawsuit, the corporation is initially named as a defendant because it is an indispensable party to the litigation. *See Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990); *Nejmanowski v. Nejmanowski*, 841 F.Supp. 864, 865-66 (C.D. Ill. 1994). The named individual plaintiff in a shareholder derivative lawsuit is only the nominal plaintiff—the real party in interest is the corporation. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). Once joined to the lawsuit, however, the corporation is ordinarily realigned from defendant to plaintiff. *Johnson v. Masselli*, No. 2:07-cv-214, 2007 WL 2743493, at *1 (N.D. Ind. Sept. 17, 2007) (citing *Nejmanowski*, 841 F.Supp. at 865-66). An exception to realignment exists if "corporate management" is antagonistic to the original shareholder plaintiff. *Smith v. Sperling*, 354 U.S. 91, 96 (1957). *See also Swanson v. Traer*, 354 U.S. 114, 116 (1957); *Van Gelder v. Taylor* 621 F.Supp. 613, 620 (N.D. Ill. 1985). In such an instance, the corporation remains as a defendant. *Smith*, 354 U.S. at 96.

Antagonism may be drawn from allegations of fraud, breach of trust, or illegality. *Id*. It may also be present whenever the management of the corporation refuses to take action or if "the management is aligned against the stockholder and defends a course of conduct which he attacks." *Id*. The existence of antagonism should be judged on the face of the pleadings and by the nature of the controversy, not by considering the merits of the allegations. *Id*.

Indiana recognizes an exception to the general rule requiring derivative actions that permits the court, in its discretion, to allow shareholders of a closely-held corporation to bring a direct action in their own names, instead of a derivative action. *Barth II*, 659 N.E.2d at 560-62. A closely-held corporation is one which has relatively few shares that are generally not traded in the securities market. *Id*. at 562 n.5 (citations omitted). This exception recognizes the fact that

5

"shareholders of closely-held corporations have very direct obligations to one another and . . . shareholder litigation in the closely-held corporation context will often not implicate the principles which gave rise to the rule requiring derivative litigation. . . ." *Id*. at 562.

When deciding whether to exercise its discretion and treat an action raising derivative claims as a direct action, the trial court must consider whether doing so will "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *Id*. at 563 (citing American Law Institute, *Principles of Corporate Governance* § 7.01(d)).

There is, however, an exception to this exception. In *Hubbard v. Tomlinson*, a shareholder of a close corporation attempted to bring a direct action against a fellow shareholder and the corporation's accounting firm under the *Barth II* exception. 747 N.E.2d 69, 70-71 (Ind. Ct. App. 2001.) The Indiana Court of Appeals, however, held that a direct action was unavailable because the shareholder of the close corporation was also asserting claims against a third party. *Id*. at 72. The Court found that a direct action would not protect other creditors of the corporation and would interfere with the fair distribution of any recovery. *Id*. Furthermore, the Court analyzed the *Barth II* factors and found that a direct action would also be inappropriate because it would expose the corporation *and the third party* to a multiplicity of actions. *Id*.

## IV. DISCUSSION

A. *Counts I, II, III, IV, V, and VI Must Be Brought Derivatively*.

In the present case, Miller relies on the *Barth II* exception and asserts that all of his claims have been properly brought as direct actions. He argues that because Up In Smoke and

6

CR Smoke are close corporations with only two shareholders, the Court should exercise its discretion and allow him to bring all of his claims as a direct action. (Pls.' Br. 11.) Miller also claims that a direct action would not expose Up In Smoke and CR Smoke to a multiplicity of actions and that "normal corporate protections" would be available to protect third-party creditors of Up In Smoke and CR Smoke. *Id*.

The Defendants, however, rely on *Barth II* and *Hubbard* for the proposition that Counts I, II, III, IV, V, and VI must be brought derivatively because Up In Smoke and CR Smoke are the real parties in interest. They emphasize that under *Barth II*, the Court has discretion to treat derivative claims as a direct action, but is not required to do so. (Defs.' Resp. Br. 4.) They then argue that the Court should not exercise this discretion because a direct action would materially prejudice the interest of Up In Smoke and CR Smoke's creditors and interfere with the fair recovery among all interested persons. (Defs.' Br. 7.) Furthermore, the Defendants claim that under the *Hubbard* rule, the existence of third parties as additional defendants prevents Miller from bringing these claims directly.

The Defendants' argument that Counts I through VI must be brought derivatively on behalf of Up In Smoke and CR Smoke is persuasive. To begin, Up In Smoke and CR Smoke are the real parties in interest with respect to each of these claims. Miller alleges that the Rodriguez's engaged in a variety of wrongful acts that hurt Up In Smoke and CR Smoke, thereby damaging him by lowering the value of his shares. Despite Miller's wish to the contrary, he cannot maintain an action in his own name to redress these injuries to the corporations, even though the Rodriguez's actions have damaged him by lowering the value of his stock. *Barth II*, 659 N.E.2d at 560; *Knauf,* 622 N.E.2d at 165; *Moll*, 419 N.E.2d at 161. As a general

presumption, therefore, Counts I through VI must be brought derivatively.

This initial determination does not automatically end the Court's inquiry. The *Barth II* exception could allow Counts I through VI to be brought directly, notwithstanding the presumption that they are derivative. However, the mere fact that Up In Smoke and CR Smoke are each close corporations with only two shareholders (Miller and C. Rodriguez for Up In Smoke and Miller and R. Rodriguez for CR Smoke) does not automatically permit Miller to bring his claims directly. Rather, the Court is bound to consider whether a direct action would unfairly expose the corporations or the other defendants to a multiplicity of actions, materially prejudice the interests of the corporations' creditors, or interfere with a fair distribution of the recovery among all interested persons. *Barth II*, 659 N.E.2d at 563 (citing American Law Institute, *Principles of Corporate Governance* § 7.01(d)).

Applying the *Barth II* factors to the present case, Miller cannot bring Counts I through VI as a direct action. To begin, a direct action would materially prejudice the interests of Up In Smoke and CR Smoke's numerous existing creditors—one of which, incidentally, is Miller's own company and co-plaintiff, Miller Fireworks. Were Miller and Miller Fireworks to recover directly, they would in effect jump to the front of the collection line and displace existing creditors for whom priority has already been established and recovery is uncertain. *See Hubbard*, 747 N.E.2d at 72 (finding direct action unavailable in part because it would interfere with rights of existing creditors); *cf. Cutshall v. Barker*, 733 N.E.2d 973, 983 (Ind. Ct. App. 2000) (finding that interests of creditors would not be prejudiced because corporation was being liquidated and creditors were being paid).

Additionally, allowing Counts I through VI to proceed directly could leave the

8

corporation and other defendants exposed to the threat of a multiplicity of new actions. For example, Miller alleges that he has been personally damaged by Estep Accounting's breach of its fiduciary duty to Up In Smoke, CR Smoke, and their individual shareholders. (Am. Compl. ¶¶ 95-101.) If only Miller brings an action against Estep Accounting, Up In Smoke, CR Smoke, or the Rodriguez's could later levy the same accusations against Estep regardless of the outcome of the present lawsuit. Similarly, Up In Smoke could file suit against Rudy Rodriguez and CR Smoke could file suit against Charlotte Rodriguez and allege more or less the same claims as Miller. Rudy and Charlotte Rodriguez could even sue each other. C*f. Cutshall*, 733 N.E.2d at 983 (finding that multiple actions unlikely where corporation was in the process of being liquidated).

Furthermore, even if the creditors of Up In Smoke and CR Smoke would be protected, recovery amongst all interested parties was not impaired, and there was no risk of a multiplicity of actions, the Court is still confronted by the *Hubbard* prohibition on direct actions when third parties are also defendants. Here, there are four third party defendants—Fat Enterprises, LLC, Rudy Rodriguez (a third party to Up In Smoke), Charlotte Rodriguez (a third party to CR Smoke), and Estep Accounting Services. With the inclusion of these third-parties, Counts I through VI must be brought derivatively on behalf of Up In Smoke and CR Smoke. *See Hubbard*, 747 N.E.2d at 72;

To summarize, the *Barth II* exception does not permit Miller to overcome the presumption in favor of derivative actions. Rather, a direct action would impair the rights of creditors and expose the corporations and other defendants to a multiplicity of actions. Furthermore, the existence of third-party defendants prevents Miller from bringing these claims

9

in his own name. Accordingly, Counts I through VI must be brought derivatively on behalf of Up In Smoke and CR Smoke.[2]

B. *Because the Management of Up In Smoke and CR Smoke is Antagonistic to the Lawsuit, the Corporations will not be Realigned as Plaintiffs.*

Miller's complaint levies accusations of fraud, breach of fiduciary duty, and numerous other illegalities against the Rodriguez's, Fat Enterprises, and Estep Accounting. (Compl. ¶¶ 75-91.) He argues that the Rodriguez's have usurped opportunities belonging to Up In Smoke and CR Smoke and diverted corporate assets to their own benefit. *Id*. Based on an examination of the pleadings, *see Smith*, 354 U.S. at 96, it is fairly obvious that the management of Up In Smoke and CR Smoke—that is, Rudy and Charlotte Rodriguez—is antagonistic to Miller, the original shareholder plaintiff.

The Defendants never truly challenge Miller's claim that they are antagonistic to the lawsuit and that Up In Smoke and CR Smoke should not be re-aligned as plaintiffs. Indeed, in their response brief, the Defendants admit that Miller's claim of antagonism "states the obvious" and instead focus their argument on requiring that Miller bring his claims derivatively. (Defs.' Resp. Br. 6.) With the antagonism clearly evident on the face of the pleadings, and the Defendants apparently conceding its existence, Up In Smoke and CR Smoke will not be re-aligned as plaintiffs. *Cf. Johnson v. Masselli*, No. 2:07-cv-214, 2007 WL 2743493, at *2 (N.D. Ind. Sept. 17, 2007) (finding no antagonism and re-aligning the corporation as a plaintiff.)

Furthermore, when corporate management opposes the derivative suit, the corporation is treated as a defendant rather than as a plaintiff for purposes of determining whether there is

---

[2] With Counts I through VI now recast as a derivative action, the Plaintiffs are granted leave to amend their complaint and conform it to the requirements of Federal Rule of Civil Procedure 23.1(b).

diversity jurisdiction. *Beck v. Dobrowski*, 559 F.3d 680, 687 (7th Cir. 2009) (citing *Smith*, 354 U.S. at 95-97; *Doctor v. Harrington*, 196 U.S. 579, 587 (1905); *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234-35 (9th Cir. 2008); *Gabriel v. Preble*, 396 F.3d 10, 14-15 (1st Cir. 2005)). Even though Up In Smoke and CR Smoke are the real parties in interest and technical plaintiffs, they are treated as defendants for jurisdictional purposes. *See Van Gelder,* 621 F.Supp. at 621 (finding diversity jurisdiction preserved after corporations kept as defendants because of antagonism); SHAREHOLDER DERIV. ACTIONS L. & PRAC. § 4:7 (2009) (discussing how diversity jurisdiction may be preserved when corporation is kept as a defendant and collecting cases). For purely jurisdictional purposes therefore, this lawsuit consists of citizens of Indiana (Up In Smoke, CR Smoke, Fat Enterprises, Rudy Rodriguez, and Charlotte Rodriguez) and Michigan (Estep Accounting) against citizens of Ohio (Miller and Miller Fireworks). Accordingly, there is complete diversity of citizenship and the Court has subject matter jurisdiction over this lawsuit.

C. *Counts VII, VIII, and IX May be Brought Directly by Miller.*

A shareholder may bring a direct action to vindicate rights that specifically belong to him or to other shareholders. For instance, a shareholder can generally bring an action to enforce voting rights, compel dividends, prevent oppression or fraud against minority shareholders, inspect corporate books, or compel shareholder meetings. *See Knauf*, 622 N.E.2d at 165; *Sacks v. Am. Fletcher Nat'l Bank & Trust Co.*, 279 N.E.2d 807, 811-12 (Ind. 1972); *Marcuccilli v. Ken Corp.*, 766 N.E.2d 444, 449 (Ind. Ct. App. 2002).

Here, Count VII seeks to allow Miller to inspect all corporate books and records of CR Smoke and Up In Smoke. (Compl. ¶¶ 106-109.) Count VIII seeks to have a receiver appointed

over Up In Smoke and CR Smoke (Compl. ¶¶ 110-112) and, in the alternative, Count IX seeks a judicial dissolution of Up In Smoke and CR Smoke. (Compl. ¶¶ 113-118.) The parties do not dispute that Miller is permitted to bring these three counts directly in his own name, and indeed, Indiana law specifically allows him to do so. *See* Ind. Code § 23-1-52-2 (granting shareholders the right to inspect corporate books and records); Ind. Code § 23-1-47-3 (the Court may appoint a receiver in dissolution proceedings); Ind. Code § 23-1-47-1 (a shareholder may bring an action to dissolve the corporation). Accordingly, Miller will be permitted to proceed in his own name with respect to Counts VII, VIII, and IX.

*D. The Court Will Exercise Supplemental Jurisdiction Over Miller's Direct Claims and the Claim by Miller Fireworks.*

With Miller's lawsuit partially recast as a shareholder derivative action, the Court must consider whether it has subject matter jurisdiction over Miller's three direct claims and Miller Firework's claim. Although diversity of citizenship exists, the claims do not have more than $75,000 in controversy. Accordingly, they must be dismissed unless there is a separate basis to give this Court subject matter jurisdiction.

When the district court has original jurisdiction over an action, the court also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(a) codifies the principle that federal and state law claims are part of the same case or controversy if they derive from a common nucleus of operative fact. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997). "A loose factual connection between the claims is generally sufficient" to constitute a common nucleus of operative fact. *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614

12

(7th Cir. 2007); *Ammerman v. Sween*, 54 F.3d 423, 424-25 (7th Cir. 1995).

Several factors influence the Court's decision whether to exercise supplemental jurisdiction. For example, 28 U.S.C. § 1367(c) directs that a court may consider whether the claim raises novel or complex issues of state law, whether the federal claim has been dismissed, or "other compelling reasons." Courts also look to "principles of economy, convenience, fairness, and comity" when evaluating whether to exercise supplemental jurisdiction. *Int'l Coll. of Surgeons*, 522 U.S. at 172-73.

In the present case, the Court has original jurisdiction over the derivative claims being brought on behalf of Up In Smoke and CR Smoke by reason of diversity of citizenship. Accordingly, the Court may exercise supplemental jurisdiction over Miller's three direct claims and the claim of Miller Fireworks if they are part of the same case or controversy as the shareholder derivative claims. Miller's direct claims seek an inspection of CR Smoke and Up In Smoke's corporate books and records, to have a receiver appointed over Up In Smoke and CR Smoke, and, in the alternative, a judicial dissolution of the two corporations. (Compl. ¶¶ 106-118.) Similarly, Miller Fireworks seeks payment for a shipment of fireworks it sent to the Rodriguez's but for which they have not yet paid. These claims are undoubtedly part of the same case or controversy as the shareholder derivative claims because they are derived from a common nucleus of operative fact—the alleged mismanagement of Up In Smoke and CR Smoke, misappropriation of corporate assets, and breach of fiduciary duty by the Rodriguez's and Estep Accounting.

Furthermore, the supplemental claims do not raise any novel or complex issues of state law. Significant judicial resources have already been invested in this case and the interests of

economy and fairness clearly support the Court exercising supplemental jurisdiction. Accordingly, the Court will exercise supplemental jurisdiction over Counts VII, VIII, and IX.

## V. CONCLUSION

To summarize, Counts I, II, III, IV, V, and VI of the complaint must be brought derivatively by Miller on behalf of Up In Smoke and CR Smoke. Because corporate management is antagonistic to these claims, however, Up In Smoke and CR Smoke will not be re-aligned as plaintiffs and diversity jurisdiction is preserved. Miller is able to bring Counts VII, VIII, and IX directly in his own name and the Court will exercise supplemental jurisdiction over these three claims.

Now that the Court's jurisdiction has been confirmed, this case is set for a telephonic scheduling conference on September 14, 2010, at 10:00 a.m. to set a further hearing concerning the appointment of a receiver. The temporary receiver's Motion for Disbursement of Funds (Docket # 111) will also be heard at that time; the Court will contact counsel and attorney Wagoner by telephone.

SO ORDERED.

Enter for September 8, 2010.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge